**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IMRAN ALI,<br><br>        Petitioner,<br><br>    v.<br><br>Marcos CHARLES, in his official capacity as Acting Executive Associate Director of Enforcement and Removal Operations, Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Pamela BONDI, in her official capacity as U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>        Respondents. | Case No.<br><br>Hon.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

1. This petition arises from the sudden and inexplicable re-detention of Petitioner by ICE agents on 12/30/2025.

2. Petitioner is a citizen of Pakistan and resident of the Bronx, New York, who was unlawfully and unconstitutionally arrested by ICE on 12/30/2025.

Without justification, probable cause, or reasonable suspicion of a crime or immigration violation, Petitioner was, without justification or probable cause, arrested and detained by ICE agents. This arrest violated 8 U.S.C. § 1226(a),8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8, Section 236 of the INA, and the Fourth and Fifth Amendments of the U.S. Constitution.

3. Petitioner is currently detained at the Brooklyn Metropolitan Detention Center, 80 29th Street, Brooklyn, NY 11232, a government-run facility managed by the Federal Bureau of Prisons and the U.S. Department of Justice.

4. Petitioner entered the United States on 09/11/2024 near the Arizona-Mexico border and subsequently moved to New York in November of 2024. He has lived here ever since.

5. On 12/30/2025, ICE agents suddenly detained Petitioner without prior notice or an opportunity to be heard. He was taken into ICE custody while attending an ICE check-in appointment. Agents produced no warrant or explanation before detaining him. Petitioner received no written notice that his parole was terminated, no statement of reasons, and no chance to contest his detention, rendering the arrest and ensuing custody unconstitutional and unlawful. See 8 C.F.R. § 212.5(e)(2)(i) and Section 235 of the INA.

6. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be immediately released from custody and not re-detained absent leave of this Court, because his current detention is the product of an unconstitutional arrest and re-detention without due process. In the alternative, Petitioner seeks an order requiring that he receive constitutionally adequate notice and a meaningful opportunity to be heard before any future detention.

7. Here, officers arrested Petitioner without the statutory "reason to believe" standard or any basis to think he might escape before a warrant could be obtained, and in a manner that violated 8 C.F.R. § 287.8, so ICE never acquired lawful custody under the INA.

8. Because Petitioner's detention does not satisfy the INA's arrest and detention prerequisites, he is "in custody in violation of the Constitution or laws of the United States" under 28 U.S.C. § 2241(c)(3), and the appropriate remedy is immediate release from ICE detention.

9. Additionally, this Petition also arises from the U.S. government's new policy, which contradicts both the plain language of the Immigration and Nationality Act (INA) and decades of agency practice, of erroneously interpreting the INA to mandate detention without the possibility of bond for noncitizens who

entered the United States without inspection, even if they have been residing here for years.

10. Petitioner is statutorily entitled to a bond hearing before an Immigration Judge (IJ) but will not receive one or be released on bond because of a new policy and legal interpretation by ICE and the Department of Justice.

11. The denial of bond is a new policy issued on July 8, 2025, instructing all ICE employees to no longer apply 8 U.S.C. § 1226(a) to people charged with being inadmissible under § 1182(a)(6)(A)(i)—i.e., those who initially entered the United States without inspection. Instead, under the new policy, ICE employees are to subject people like Petitioner to mandatory detention without bond under § 1225(b)(2)(A), no matter how long they have resided in the United States.

12. The policy was joined by the Board of Immigration Appeals (BIA) in their precedential decision, Matter of *YAJURE HURTADO*, 29 I & N Dec. 216, issued on September 5, 2025.

13. BIA decisions are binding authority on Immigration Judges and hold that IJs no longer have jurisdiction to hold bond hearings for detained individuals like Petitioner.

14. As a result, Petitioner will remain in mandatory detention. Absent relief from this Court, he faces the prospect of months or years in immigration custody, separated from his family and community, all while being deprived an individualized hearing justifying his detention in violation of the INA and Due Process.

15. Because both the unlawful re-detention and the misapplication of the INA render his current detention unconstitutional, the appropriate remedy is immediate release. These statutory errors reinforce the conclusion that Petitioner's ongoing detention violates the Fifth Amendment and must end.

16. Petitioner is terrified and experiencing harm from being in a carceral setting for the first time in his life.

17. Respondents' new legal interpretation, which has caused Petitioner to be detained without bond, is plainly contrary to the statutory framework of the INA and contrary to both agency regulations and decades of consistent agency practice applying § 1226(a) to people like Petitioner. It also violates his right to due process by depriving him of his liberty without any consideration of whether such a deprivation is warranted.

18. Courts have found that, when a noncitizen detainee's due process was violated, his detention is unlawful and **he must be released**. *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV (W.D.N.Y. July 16, 2025).

19. Accordingly, Petitioner also seeks a writ of habeas corpus requiring that his be **immediately released from custody**, or in the alternative, that Respondents provide him with a bond hearing under § 1226(a) within three (3) days.

## JURISDICTION

20. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2241(c)(3) ("in custody in violation of the Constitution or laws or treaties of the United States,"); and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

21. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

22. Venue is proper in the Eastern District of New York under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. Petitioner is detained at the direction, and is in the immediate custody, of Respondent Marcos Charles. See *Roman v. Ashcroft*, 340 F.3d 314, 320-21 (6th Cir. 2003).

23. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims and relevant facts occurred in this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

24. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three (3) days unless for good cause additional time, not exceeding twenty (20) days, is allowed." *Id.*

25. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the

calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

26. Petitioner is a citizen of Pakistan and resident of Bronx, New York. Petitioner has been detained since 12/30/2025.

27. Respondent Marcos Charles is the Acting Executive Associate Director of Enforcement and Removal Operations, Immigration and Customs Enforcement. As such, Director Charles is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

28. Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

29. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

30. Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review (EOIR) and the immigration system it operates is a component agency. She is sued in her official capacity.

31. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

## FACTS

32. Petitioner Imran Ali has resided in the United States for approximately two (2) years and was living in the Bronx, NY prior to detention. Petitioner is 45 years old.

33. Petitioner has several friends who are United States Citizens. He has maintained meaningful employment via a valid work permit while in the United States. Petitioner has no criminal history. Petitioner has a pending asylum application that was properly filed and has legal counsel that is representing him for this underlying relief application.

34. On information and belief, he attended all court hearings as required and met every other condition of his "form of conditional parole." *Martinez v. Hyde*, 792 F. Supp. 3d 211 (D. Mass. 2025).

35. Petitioner was detained while attending a pre-scheduled ICE check-in, further illustrating his willingness and ability to follow through with everything that is required of him by immigration authorities.

36. On information and belief, Respondents made no individualized determination regarding whether the conditions of his release had been violated or whether there was a changed circumstance warranting his re-detention.

37. Petitioner received no advance written notice that DHS intended to terminate his parole, no contemporaneous written decision explaining the basis for parole termination or re-detention, and no opportunity, either before or shortly after his arrest, to contest his loss of liberty before a neutral decisionmaker.

38. Petitioner's sudden re-detention and continued confinement have caused serious harm, including profound anxiety, difficulty sleeping, and fear of physical and psychological abuse in the detention facility, despite his prior compliance with all conditions of release and absence of any criminal history.

39. Petitioner is not a flight risk nor a danger to his community.

## LEGAL FRAMEWORK

### A. Detention Is Ultra Vires Under The INA And Must End

40. The government may detain a noncitizen before a final removal order only as the Immigration and Nationality Act expressly authorizes, and only when custody flows from a statutorily valid arrest. See Section 236 of the INA provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed," and then permits continued detention or release on bond or conditional parole under that lawful custody. 8 U.S.C. § 1226(a).

41. Section 287(a)(2), in turn, allows a warrantless immigration arrest only "if [the officer] has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest," and requires prompt examination without unnecessary delay. 8 U.S.C. § 1357(a)(2).

42. These statutory limits are implemented and reinforced by regulation. The arrest standard in § 1357(a)(2) is fleshed out by 8 C.F.R. § 287.8, which requires that immigration officers possess reasonable suspicion for stops and "reason to believe" (probable cause) for arrests, and forbids enforcement actions based solely on race, ethnicity, or other impermissible factors.

43. Likewise, the custody and bond regulations at 8 C.F.R. § 236.1 presupposes that an individual has first been "arrested and taken into custody" under valid statutory authority before ICE may issue a Notice of Custody Determination and set or deny bond under § 1226.

44. Together, these provisions make clear that civil immigration detention is lawful **only** when it is the continuation of a lawful arrest carried out within the bounds of 8 U.S.C. § 1357 and its implementing regulations.

45. Petitioner's custody does not satisfy these statutory prerequisites. Petitioner was arrested at his ICE check-in appointment without a warrant issued by the Attorney General. Petitioner was detained by ICE based solely on race, ethnicity, or other impermissible factors.

46. As stated above, ICE officers arrested Petitioner at his ICE check-in appointment without the "reason to believe" required by § 1357(a)(2), without any articulable basis to conclude that Petitioner was in violation of the immigration laws, and without any non-speculative showing that Petitioner was "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2).

47. The arrest of Petitioner also violated 8 C.F.R. § 287.8 because officers acted on impermissible factors and without the reasonable suspicion or probable cause that regulation demands.

48. An arrest that exceeds § 1357(a)(2) and 8 C.F.R. § 287.8 is ultra vires; it is not an arrest "on a warrant issued by the Attorney General" or otherwise within the ambit of § 1226(a), and therefore cannot supply the lawful predicate for civil detention.

49. Because Respondents never acquired lawful custody under the INA, they lack statutory authority to "continue to detain" Petitioner or to deny release under § 1226. 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. § 236.1.

50. Petitioner is therefore "in custody in violation of the Constitution or laws or treaties of the United States," within the meaning of 28 U.S.C. § 2241(c)(3), not only because the seizure contravened the Fourth and Fifth Amendments, but also because it contravened the INA's carefully cabined arrest and detention scheme.

51. Habeas is the proper vehicle to remedy such ultra vires confinement, and where, as here, custody itself lacks any lawful statutory basis, the only adequate remedy is immediate release from civil immigration detention.

## B. Petitioner's Detention Violates the Constitution

52. The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law" (emphasis added). See U.S. Const. Amend. V. See also *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

53. Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Herrera v. Tate*, No. H-25-3364, 2025 U.S. Dist. LEXIS 189999, at *31 (S.D. Tex. Sep. 26, 2025) (quoting *Young v. Harper*, 520 U.S. 143, 147, (1997).

54. 8 C.F.R. § 212.5(e)(2)(i) requires "written notice to the *[noncitizen]*' in order for a parole termination to be effective" [emphasis added].

55. Petitioner was arrested and detained before he was given any notice that his parole was revoked, making his arrest unlawful. See U.S. Const. Amend. V. The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law" (emphasis added). See also *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

56. Courts have found that, where a noncitizen detainee's due process was violated, his detention is unlawful and he must be released. *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV (W.D.N.Y. July 16, 2025).

57. The government does not have the authority to arrest a noncitizen who has been granted the equivalent of parole without properly terminating that parole, see *Y-Z-L-H v. Bostock*, 2025 WL 1898025, at *13 (D. Or. July 9, 2025), or unless there is some other valid reason to arrest him.

58. The interest in being free from imprisonment is "the most significant liberty interest there is." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)); see also *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty.").

59. Petitioner's re-detention, two (2) years after being paroled into the United States from an initial detention, was without prior notice, a showing of changed circumstances, or a meaningful opportunity to object. Therefore, he was not afforded the procedural requirements of the Fifth Amendment. See, e.g., *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 U.S. Dist. LEXIS 156344, at *36 (D. Ariz. Aug. 11, 2025); *Rosales-Garcia v.*

*Holland*, 322 F.3d 386, 409 (6th Cir. 2003) ("Excludable aliens—like all aliens—are clearly protected by the Due Process Clauses of the Fifth and Fourteenth Amendments."), citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S. Ct. 1064, 30 L. Ed. 220 (1886).

60. The government therefore does not have the authority to arrest a noncitizen who has been granted parole without properly terminating that parole. *Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986, at *26 (W.D.N.Y. July 16, 2025); *Y-Z-L-H v. Bostock*, 2025 U.S. Dist. LEXIS 130216, 2025 WL 1898025, at *13 (D. Or. July 9, 2025), or unless there is some other valid reason to arrest him.

61. Due process then "requires a hearing before an immigration judge before re-detention." *Mejia v. Woosley,* Civil Action No. 4:25-cv-82-RGJ, 2025 U.S. Dist. LEXIS 203256, at *11 (W.D. Ky. Oct. 15, 2025) (internal citation and internal quotation marks omitted).

62. Because Respondents arrested and re-detained Petitioner without the written notice, statement of reasons, and meaningful opportunity to be heard that due process requires, his present custody is unlawful, and the appropriate remedy under 28 U.S.C. § 2241 is immediate release from detention.

## C. Petitioner's Detention Without a Bond Hearing Violates the INA and Fifth Amendment

63. As an alternative and independent basis for relief, Petitioner's detention also violates the INA and due process because the government is denying him a bond hearing under the correct statutory provision.

64. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

65. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in removal proceedings before an IJ. See 8 U.S.C. § 1229a. Under § 1226(a), individuals who are taken into immigration custody pending a decision on whether they are to be removed can be detained but are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d). See also Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (explaining that § 1226(a) applies to those who are "already in the country" and are detained "pending the outcome of removal proceedings"). Section 1226(a) is the statute that, for decades, has been applied to people like Petitioner who have been living in the United States and are charged with inadmissibility under § 1182(a)(6)(A)(i).

66. Second, the INA provides for mandatory detention of certain recently arrived noncitizens, namely those subject to expedited removal under 8 U.S.C. § 1225(b)(1), and other recent arrivals seeking admission under § 1225(b)(2). See Jennings, 583 U.S. at 287, 289 (explaining that § 1225(b)(2)'s mandatory detention scheme applies "at the Nation's borders and ports of entry" to noncitizens "seeking admission into the United States."). Section 1225(b)(2) is the statute that Respondents have suddenly decided is applicable to people like Petitioner.

67. Third, the INA also provides for detention of noncitizens who have already been ordered removed, see 8 U.S.C. § 1231(a)–(b). Section 1231 is not relevant here.

68. This case concerns Respondents' policy as applied towards individuals like Petitioner – namely that he is subject to mandatory detention without bond under §1225(b)(2), rather than being bond-eligible under § 1226(a). Because this ongoing detention is the direct product of Respondents' unlawful termination of parole and re-detention without due process, the appropriate remedy under 28 U.S.C. § 2241 is immediate release from custody.

69. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act

(IIRIRA) of 1996, Pub. L. No. 104–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

70. Following the 1996 enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) (explaining that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.").

71. Thus, in the three decades that followed, people who entered without inspection and were subsequently placed in removal proceedings received bond hearings if ICE chose to detain them, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed

"arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

72. However, on July 8, 2025, ICE, "in coordination with" DOJ, suddenly announced a new governmental policy that rejected the well-established understanding of the statutory framework and reversed decades of agency practice.

73. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection are subject to mandatory detention without bond under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

74. Further, in a September 5, 2025, decision, the Board of Immigration Appeals (BIA) issued a decision that holds that all noncitizens who entered the United States without admission or parole are ineligible for bond hearings before an immigration judge. See, Matter of *YAJURE HURTADO*, 29 I & N Dec. 216.

75. In particular, the Respondents have determined that immigration judges no longer have jurisdiction to hold bond hearings for noncitizens like Petitioner. The BIA's decision is binding on all immigration judges.

76. This novel interpretation has been roundly rejected by federal district courts almost unanimously. See, inter alia, *Reyes v. Raycraft*, No. 25-cv-12546, 2025 U.S. Dist. LEXIS 175767, at *19-20 (E.D. Mich. Sep. 9, 2025) ("...[T]he BIA's decision to pivot from three decades of consistent statutory interpretation and call for [petitioner's] detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation. At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context.") (internal citations omitted); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 U.S. Dist. LEXIS 169423, at *23, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (holding that "[t]here can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border."); *Sanchez v. Olson*, No. 25 CV 12453, 2025 U.S. Dist. LEXIS 211062, at *7 (N.D. Ill. Oct. 27, 2025)("almost every district court" has rejected DHS/DOJ interpretation); *Vazquez v. Bostock*,

2025 U.S. Dist. LEXIS 193611, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) (collecting cases); *Buenrostro-Mendez v. Bondi*, 2025 U.S. Dist. LEXIS 201967, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support finding that § 1226 applies to these circumstances.")).

77. DHS's and DOJ's interpretation defies the INA. As the above courts explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

78. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

79. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a).

80. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

81. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). See Jennings, 583 U.S. at 287 (explaining that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible.").

82. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people, like Petitioner, who have already entered and were residing in the United States at the time they were apprehended by immigration authorities.

83. Petitioner is entitled to a bond hearing before an immigration judge where the government bears the burden of proof by clear and convincing evidence that he is a flight risk or danger to the community. See, e.g., *M.T.B. v. Byers*, Civil Action No. 2: 24-028-DCR, 2024 U.S. Dist. LEXIS 148118, at *11 (E.D. Ky. Aug. 20, 2024) (government should bear burden of proof at § 1226(a) bond

hearing); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 U.S. Dist. LEXIS 188232, at *35 (W.D. Tex. Sep. 21, 2025) ("vast majority"—an "overwhelming consensus"—of courts have placed the burden on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk.).

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**Ultra Vires Detention in Violation of the INA Requires Immediate Release**

84. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

85. ICE may detain a noncitizen only when custody flows from a statutorily valid arrest carried out within the limits Congress imposed in 8 U.S.C. §§ 1226 and 1357 and their implementing regulations, including the "reason to believe" and "likely to escape" requirements for warrantless arrests in § 1357(a)(2).

86. Here, officers stopped and arrested Petitioner at his regular ice check-in appointment without the statutory "reason to believe" standard, without any non-speculative basis to think he might escape before a warrant could be

obtained, and in a manner that violated 8 C.F.R. § 287.8; as a result, ICE never acquired lawful custody over Petitioner under the INA.

87. Because Petitioner's ongoing detention does not satisfy the INA's arrest and detention prerequisites, he is "in custody in violation of the Constitution or laws or treaties of the United States" within the meaning of 28 U.S.C. § 2241(c)(3), and the only adequate remedy this Court can provide is to order his immediate release from ICE detention.

## COUNT II

### Re-Detention Violation of Due Process

88. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

89. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

90. Petitioner has a fundamental interest in liberty and being free from official restraint.

91. Petitioner's re-detention without a pre-arrest hearing violates his right to due process.

92. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others, and without any meaningful opportunity to contest his custody, violates his right to due process and renders his current detention unconstitutional and unlawful.

## COUNT III

### Violation of the INA

93. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

94. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

95. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

## COUNT IV

### Mandatory Detention Violation of Due Process

96. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

97. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that the Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

98. Petitioner has a fundamental interest in liberty and being free from official restraint.

99. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

100.    DHS terminated Petitioner's parole and re-detained him without prior written notice, any individualized showing of changed circumstances, or a meaningful opportunity to be heard before a neutral decisionmaker.

## COUNT V

### Unlawful Detention and Right to Immediate Release

101.    In *Mata Velasquez v. Kurzdorfer*, the court held that DHS's re-detention of a compliant detainee under similar circumstances likely procedural due process and ordered his immediate release, barring any re-detention without leave of court after a meaningful hearing.

102.    Other courts have likewise found that re-detaining a previously released noncitizen "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond" violates the Fifth Amendment, and that re-detention without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond does not satisfy due process. See also *Valdez v. Joyce*, No. 25-cv-4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025); *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018); *J.U. v. Maldonado, Jr.*, No. 25-cv-4836, slip op. at *__ (E.D.N.Y. Sept. 28, 2025); Kelly v. Almodovar, No. 25-cv-6448, slip op. at *__ (S.D.N.Y. 2025).

103.    Because Petitioner's re-detention mirrors the unconstitutional practices condemned in Mata Velasquez and the other cited decisions, specifically, re-detention with no prior notice, no showing of changed circumstances, and no meaningful opportunity to respond, this Court should order his immediate release within twenty-four (24) hours and enjoin Respondents from re-detaining him absent prior written notice, a particularized showing of changed circumstances, and a meaningful opportunity to be heard before a neutral decisionmaker."

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

A. Assume jurisdiction over this matter;

B. Issue a writ of habeas corpus requiring that Respondents release Petitioner from custody within twenty-four (24) hours and enjoining them from re-detaining Petitioner absent leave of this Court, which should not be granted unless and until Respondents demonstrate that Petitioner has received constitutionally adequate notice and a meaningful opportunity to be heard before a neutral decisionmaker;

C. In the alternative to immediate release, order a bond hearing pursuant to 8 U.S.C. § 1226(a) within three (3) days, at which the government bears the

burden to justify continued detention by clear and convincing evidence and at which the immigration judge has authority to order release;

D. Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;

E. Declare that 8 U.S.C. § 1226(a)—and not 8 U.S.C. § 1225(b)(2)(A) —is the appropriate statutory provision that governs Petitioner's detention and eligibility for bond because Petitioner is not a recent arrival "seeking admission" to the United States, and instead was already residing in the United States when apprehended and charged as inadmissible for having allegedly entered the United States without inspection;

F. To the extent the Court reaches the statutory issues, declare that 8 U.S.C. § 1226(a), award Petitioner fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

G. Grant any other and further relief that this Court deems just and proper.

Respectfully submitted,

By: **/s/ Jana Junuz**

Jana Junuz, Esq.

Law Office of Junuz and Kaurs, P.C.

*Counsel for Petitioner*

103-11 101st Street

Ozone Park, NY 11416

(516) 806-2122

(718) 813-9917

jjunuzlaw@gmail.com

Dated: 02/02/2026

## PROOF OF SERVICE

I hereby certify that on 02/02/2026, I filed the above Petition for Writ of Habeas Corpus with the UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK via PACER and I further certify that all parties and attorneys of record were served with same via email and PACER. I declare that the above statements are true to the best of my information, knowledge and belief.

**/s/ Jana Junuz**

Jana Junuz, Esq.

Law Office of Junuz and Kaurs, P.C.

*Counsel for Petitioner*

## EXHIBIT LIST

A.        Notice to Appear

B.        Petitioner's I-589 Application for Asylum and Withholding of Removal (I-589)

C.        I-830 Notice to EOIR: Alien Address (2x)

D.        EOIR Bond Hearing status

# Exhibit A

Uploaded on: 11/04/2024 at 10:00:54 AM (Central Standard Time)  Base City: CIC

Allegations: Admits 1,2,4,5, denies 3, sustain 3 | Charges: 212(a)(6)(A)(i), denies 212(a)(7)
Designated Country: PAKISTAN |

## DEPARTMENT OF HOMELAND SECURITY
# NOTICE TO APPEAR

Subject to Securing the Border (SB)

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: _____ 221149729

In the Matter of:

Respondent: _____ **IMRAN ALI** _____ currently residing at:

_____ MONTGOMERY PROCESSING CTR, 806 HILBIG RD, CONROE TX, 773010000 _____ 917-776-3976
(Number, street, city, state and ZIP code)                          (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Pakistan and a citizen of PAKISTAN;
3. You entered the United States at an unknown location on or about 09/11/2024;
4. You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document;
5. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

Section 212(a)(6)(A)(i) of the Act, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☒ Section 235(b)(1) order was vacated pursuant to:      ☒ 8CFR 208.30   ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

_____ 806 HILBIG RD, STE 2-300, CONROE, TX, 77301 _____
(Complete Address of Immigration Court, including Room Number, If any)

on ___12/05/2024___ at ___8:30 AM___ to show why you should not be removed from the United States based on the
       (Date)                    (Time)

charge(s) set forth above.   _____ *Subervi-Mejia, M.* _____ Supervisory Asylum Officer
                                        (Signature and Title of Issuing Officer)

Date: ___11/03/2024___   _____ Houston, TX _____
                                                  (City and State)

Exh. 1

Allegations: Admits 1,2,4,5, denies 3, sustain 3 | Charges: 212(a)(6)(A)(i), denies 212(a)(7)
Designated Country: PAKISTAN |

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the Immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the Immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/I-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the Internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is                    URDU

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
(Signature of Respondent)

Date: _____

_____
*(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on __11/4/24__, in the following manner and in compliance with section 239(a)(1) of the Act.

[✓] in person    [ ] by certified mail, returned receipt # _____ requested    [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[ ] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the __Urdu__ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

~~REFUSED TO SIGN DOCUMENT~~

_____
*(Signature of Respondent if Personally Served)*

GEORGE TOLIVER Jr
_____
DEPORTATION OFFICER
*(Signature and Title of officer)*

DHS Form I-862 (6/22)

Exh. 1

Allegations: Admits 1,2,4,5, denies 3, sustain 3 | Charges: 212(a)(6)(A)(i), denies 212(a)(7)
Designated Country: PAKISTAN |

**Privacy Act Statement**

**Authority:**

The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**

You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**

For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**

Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

# Exhibit B

Jaspreet Kaur Narang, Esq.
(*EOIR I.D #RR674552*)
265 W 37th STREET RM 1802
NEW YORK, NY 10018
(857) 222-8180
(718) 813-9917
*Attorney for Respondent*

Jaspreet Kaur Narang, Esq.
(*EOIR I.D #RR674552*)
103-11 101st AVENUE
OZONE PARK, NY 11428
*Attorney for Respondent*

DETAINED

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## NEW YORK IMMIGRATION COURT
## NEW YORK, NY

ALI, IMRAN

A# 221-149-729

RESPONDENT

_____

In Removal Proceedings

## *RESPONDENT'S AMENDED I-589 APPLICATION*

**Master Hearing:** January 12th, 2026 @ 08:30 AM
**Immigration Judge:** Conroy, Charles R.



# Application for Asylum and for
# Withholding of Removal

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-589**
OMB No. 1615-0067
Expires 09/30/2027

**START HERE - Type or print in black ink.** See the instructions for information about eligibility and how to complete and file this application.

**NOTE:** ☒ Check this box if you also want to apply for withholding of removal under the Convention Against Torture.

## Part A.I. Information About You

| 1. Alien Registration Number(s) (A-Number) *(if any)* | 2. U.S. Social Security Number *(if any)* | 3. USCIS Online Account Number *(if any)* |
|---|---|---|
| 221149729 | N/A | N/A |

| 4. Complete Last Name | 5. First Name | 6. Middle Name |
|---|---|---|
| ALI | IMRAN | N/A |

**7. What other names have you used *(include maiden name and aliases)?***
NONE

**8. Residence in the U.S. *(where you physically reside)***

| Street Number and Name | Apt. Number |
|---|---|
| 110 WELLS FARM ROAD | N/A |

| City | State | Zip Code | Telephone Number |
|---|---|---|---|
| GOSHEN | NY | 10924 | (N/A) N/A |

**(NOTE:** *You must be residing in the United States to submit this form.)*

**9. Mailing Address in the U.S.** *(if different than the address in Item Number 8)*

| In Care Of *(if applicable):* | Telephone Number |
|---|---|
| LAW OFFICE OF JUNUZ AND KAURS PC | ( 718 ) 8139917 |

| Street Number and Name | Apt. Number |
|---|---|
| 103 11 101ST AVE | |

| City | State | Zip Code |
|---|---|---|
| OZONE PARK | NY | 11416 |

**10. Sex** ☒ Male ☐ Female **11. Marital Status:** ☐ Single ☒ Married ☐ Divorced ☐ Widowed

| 12. Date of Birth *(mm/dd/yyyy)* | 13. City and Country of Birth |
|---|---|
| 02/01/1981 | SIALKOT, PAKISTAN |

| 14. Present Nationality *(Citizenship)* | 15. Nationality at Birth | 16. Race, Ethnic, or Tribal Group | 17. Religion |
|---|---|---|---|
| PAKISTANI | PAKISTANI | SOUTH ASIAN | SHIA MUSLIM |

**18.** *Check the box, a through c, that applies:* **a.** ☐ I have never been in Immigration Court proceedings.

**b.** ☒ I am now in Immigration Court proceedings. **c.** ☐ I am **not** now in Immigration Court proceedings, but I have been in the past.

**19.** *Complete 19 a through c.*

**a.** When did you last leave your country? *(mm/dd/yyyy)* 09/28/2023 **b.** What is your current I-94 Number, if any? N/A

**c.** List each entry into the U.S. beginning with your most recent entry. *List date (mm/dd/yyyy), place, and your status for each entry. (Attach additional sheets as needed.)*

| Date | Place | Status | Date Status Expires |
|---|---|---|---|
| 09/11/2024 | ARIZONA | EWI | N/A |
| | | | |
| | | | |

| 20. What country issued your last passport or travel document? | 21. Passport Number N/A | 22. Expiration Date *(mm/dd/yyyy)* |
|---|---|---|
| PAKISTAN | Travel Document Number N/A | |

| 23. What is your native language *(include dialect, if applicable)?* | 24. Are you fluent in English? | 25. What other languages do you speak fluently? |
|---|---|---|
| URDU | ☐ Yes ☒ No | Punjabi |

## Part A.II. Information About Your Spouse and Children

| For EOIR use only. | For USCIS use only. | Action: Interview Date: _____ Asylum Officer ID No.: _____ | Decision: Approval Date: _____ Denial Date: _____ Referral Date: _____ |
|---|---|---|---|

**Your spouse** ☐ I am not married. *(Skip to Your Children below.)*

| 1. Alien Registration Number (A-Number) *(if any)* N/A | 2. Passport/ID Card Number *(if any)* N/A | 3. Date of Birth *(mm/dd/yyyy)* 02/09/1985 | 4. U.S. Social Security Number *(if any)* N/A |
|---|---|---|---|
| 5. Complete Last Name ARIF | 6. First Name ASMA | 7. Middle Name N/A | 8. Other names used *(include maiden name and aliases)* N/A |
| 9. Date of Marriage *(mm/dd/yyyy)* 04/06/2012 | 10. Place of Marriage SIALKOT, PAKISTAN | 11. City and Country of Birth SIALKOT, PAKISTAN | |
| 12. Nationality *(Citizenship)* PAKISTANI | 13. Race, Ethnic, or Tribal Group SOUTH ASIAN | 14. Sex ☐ Male ☒ Female | |

15. Is this person in the U.S.?
☐ Yes *(Complete Blocks 16 to 24.)*  ☒ No *(Specify location):* SIALKOT, PAKISTAN

| 16. Place of last entry into the U.S. | 17. Date of last entry into the U.S. *(mm/dd/yyyy)* | 18. I-94 Number *(if any)* | 19. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 20. What is your spouse's current status? | 21. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 22. Is your spouse in Immigration Court proceedings? ☐ Yes ☒ No | 23. If previously in the U.S., date of previous arrival *(mm/dd/yyyy)* |

24. If in the U.S., is your spouse to be included in this application? *(Check the appropriate box.)*
☐ Yes
☐ No

**Your Children.** List **all** of your children, regardless of age, location, or marital status.

☐ I do not have any children. *(Skip to Part A.III., Information about your background.)*

☒ I have children.    Total number of children: **3**

(**NOTE:** *Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.)*

| 1. Alien Registration Number (A-Number) *(if any)* N/A | 2. Passport/ID Card Number *(if any)* N/A | 3. Marital Status *(Married, Single, Divorced, Widowed)* SINGLE | 4. U.S. Social Security Number *(if any)* N/A |
|---|---|---|---|
| 5. Complete Last Name REHMAN | 6. First Name ABDUL | 7. Middle Name N/A | 8. Date of Birth *(mm/dd/yyyy)* 02/11/2013 |
| 9. City and Country of Birth SIALKOT, PAKISTAN | 10. Nationality *(Citizenship)* PAKISTANI | 11. Race, Ethnic, or Tribal Group SOUTH ASIAN | 12. Sex ☒ Male ☐ Female |

13. Is this child in the U.S.?  ☐ Yes *(Complete Blocks 14 to 21.)*  ☒ No *(Specify location):* SIALKOT, PAKISTAN

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☒ No | |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
☐ Yes
☐ No

Form I-589  Edition  01/20/25                    Page 2 of 12

## Part A.II. Information About Your Spouse and Children (continued)

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| N/A | N/A | SINGLE | N/A |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| ARIF | ABDUL | N/A | 03/28/2015 |

| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Sex |
|---|---|---|---|
| SIALKOT, PAKISTAN | PAKISTANI | SOUTH ASIAN | ☒ Male ☐ Female |

**13. Is this child in the U.S. ?** ☐ Yes (Complete Blocks 14 to 21.)  ☒ No (Specify location): SIALKOT, PAKISTAN

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| | | | |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| | | ☐ Yes ☐ No |

**21. If in the U.S., is this child to be included in this application?** (Check the appropriate box.)

☐ Yes

☐ No

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| N/A | N/A | SINGLE | N/A |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| TAHLA | MUHAMMAD | N/A | 06/01/2024 |

| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Sex |
|---|---|---|---|
| SIALKOT, PAKISTAN | PAKISTANI | SOUTH ASIAN | ☒ Male ☐ Female |

**13. Is this child in the U.S. ?** ☐ Yes (Complete Blocks 14 to 21.)  ☒ No (Specify location): SIALKOT, PAKISTAN

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| | | | |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| | | ☐ Yes ☒ No |

**21. If in the U.S., is this child to be included in this application?** (Check the appropriate box.)

☐ Yes

☐ No

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| | | | |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| | | | |

| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Sex |
|---|---|---|---|
| | | | ☐ Male ☐ Female |

**13. Is this child in the U.S. ?** ☐ Yes (Complete Blocks 14 to 21.)  ☐ No (Specify location):

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| | | | |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| | | ☐ Yes ☐ No |

**21. If in the U.S., is this child to be included in this application?** (Check the appropriate box.)

☐ Yes

☐ No

Form I-589  Edition  01/20/25                                                                 Page 3 of 12

## Part A.III. Information About Your Background

1. List your last address where you lived before coming to the United States. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. *(List Address, City/Town, Department, Province, or State and Country.)*
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Number and Street *(Provide if available)* | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| IN HIDING | ISWATINI | ISWATINI | SOUTH AFRICA | 09/2023 | 07/2024 |
| IN HIDING | ISLAMABAD | ISLAMABAD | PAKISTAN | 06/2023 | 09/2023 |

2. Provide the following information about your residences during the past 5 years. List your present address first.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Number and Street | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| 110 WELLS FARM ROAD | GOSHEN | NY | USA | 12/2025 | PRESENT |
| 2565 COLDEN AVE | BRONX | NY | USA | 11/2024 | 12/2025 |
| TRANSIT+CAMP | N/A | N/A | N/A | 09/2023 | 11/2024 |
| 12/2025 | ISLAMABAD | ISLAMABAD | PAKISTAN | 06/2023 | 09/2023 |
| KAROL | SIALKOT | PUNJAB | PAKISTAN | 06/2023 | 06/2023 |

3. Provide the following information about your education, beginning with the most recent school that you attended.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Name of School | Type of School | Location *(Address)* | Attended From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|
| GOVT HIGH SCHOOL | HIGH SCHOOL | SIALKOT, PAKISTAN | 04/1986 | 03/1995 |
| N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A |

4. Provide the following information about your employment during the past 5 years. List your present employment first.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Name and Address of Employer | Your Occupation | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|
| TRANSPORTATION | DRIVER | 03/2018 | 03/2023 |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

5. Provide the following information about your parents and siblings (brothers and sisters). Check the box if the person is deceased.
(**NOTE:** *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.*)

| Full Name | City/Town and Country of Birth | Current Location |
|---|---|---|
| Mother ARSHAD BEGUM | SIALKOT, PAKISTAN | ☐ Deceased SIALKOT, PAKISTAN |
| Father MUHAMMAD SARWAR | SIALKOT, PAKISTAN | ☒ Deceased |
| Sibling GHULAM ALI | SIALKOT, PAKISTAN | ☐ Deceased SAUDI ARABIA |
| Sibling MUHAMMAD AKHTAR | SIALKOT, PAKISTAN | ☐ Deceased SAUDI ARABIA |
| Sibling SAFIA KAUSAR | SIALKOT, PAKISTAN | ☐ Deceased SAUDI ARABIA |
| Sibling RAZIA KAUSAR | SIALKOT, PAKISTAN | ☐ Deceased SIALKOT, PAKISTAN |

## Part B. Information About Your Application

*(NOTE: Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part B.)*

When answering the following questions about your asylum or other protection claim (withholding of removal under 241(b)(3) of the INA or withholding of removal under the Convention Against Torture), you must provide a detailed and specific account of the basis of your claim to asylum or other protection. To the best of your ability, provide specific dates, places, and descriptions about each event or action described. You must attach documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, explain why in your responses to the following questions.

Refer to Instructions, Part 1: Filing Instructions, Section II, "Basis of Eligibility," Parts A - D, Section V, Completing the Form," Part B, and Section VII, "Additional Evidence That You Should Submit," for more information on completing this section of the form.

1.  Why are you applying for asylum or withholding of removal under section 241(b)(3) of the INA, or for withholding of removal under the Convention Against Torture? Check the appropriate box(es) below and then provide detailed answers to questions A and B below.

    I am seeking asylum or withholding of removal based on:

    ☐ Race                    ☒ Political opinion

    ☒ Religion                ☒ Membership in a particular social group

    ☐ Nationality             ☒ Torture Convention

A.  Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?

    ☐ No        ☒ Yes

    If "Yes," explain in detail:
    1.  What happened;
    2.  When the harm or mistreatment or threats occurred;
    3.  Who caused the harm or mistreatment or threats; and
    4.  Why you believe the harm or mistreatment or threats occurred.

    > YES. I AND MY FAMILY HAVE EXPERIENCED SERIOUS HARM, MISTREATMENT, AND THREATS IN THE PAST. AFTER I CONVERTED FROM SUNNI ISLAM TO SHIA ISLAM IN JANUARY 2023, PEOPLE IN MY NEIGHBORHOOD IN PAKISTAN BEGAN THREATENING ME WHEN THEY SAW ME PRAYING IN THE SHIA WAY. ON APRIL 29, 2023, SEVERAL SUNNI INDIVIDUALS, INCLUDING RELATIVES, ATTACKED ME NEAR A PLAYGROUND. THEY BEAT ME, DRAGGED ME ON THE ROAD, AND DEMANDED THAT I RETURN TO SUNNI ISLAM. I WAS INJURED AND NEEDED MEDICAL TREATMENT. WHEN I WENT TO THE POLICE, THEY REFUSED TO HELP ME AND THREATENED TO ARREST ME INSTEAD. THAT SAME NIGHT, A GROUP GATHERED OUTSIDE MY HOME, SHOUTED ABUSE, AND THREATENED TO KILL ME IF I DID NOT ABANDON SHIA ISLAM. LATER, MY HOUSE WAS ATTACKED WITH STONES, AND MY WIFE AND CHILDREN WERE ALSO THREATENED. BECAUSE OF THESE REPEATED ATTACKS AND THREATS, MY FAMILY AND I LIVED IN CONSTANT FEAR FOR OUR SAFETY.

B.  Do you fear harm or mistreatment if you return to your home country?

    ☐ No        ☒ Yes

    If "Yes," explain in detail:
    1.  What harm or mistreatment you fear;
    2.  Who you believe would harm or mistreat you; and
    3.  Why you believe you would or could be harmed or mistreated.

    > YES. I FEAR SERIOUS HARM, PERSECUTION, AND POSSIBLY DEATH IF I RETURN TO MY HOME COUNTRY, PAKISTAN. I WAS ATTACKED, THREATENED, AND TARGETED BECAUSE OF MY CONVERSION FROM SUNNI ISLAM TO SHIA ISLAM. THE SAME PEOPLE WHO ATTACKED ME IN THE PAST CONTINUE TO LOOK FOR ME, AND THEY HAVE THREATENED TO KILL ME IF I DO NOT ABANDON SHIA ISLAM. THE POLICE ALSO REFUSED TO PROTECT ME AND EVEN THREATENED ME, WHICH SHOWS THAT I CANNOT RECEIVE ANY SAFETY OR SUPPORT FROM THE AUTHORITIES. MY FAMILY WAS ALSO THREATENED IN MY ABSENCE, AND THERE IS NO PLACE IN PAKISTAN WHERE I CAN LIVE SAFELY AS A SHIA MUSLIM. BECAUSE OF THESE PAST ATTACKS, CONTINUING THREATS, AND THE GOVERNMENT'S FAILURE TO PROTECT ME, I TRULY BELIEVE THAT MY LIFE WOULD BE IN DANGER IF I WERE FORCED TO RETURN TO PAKISTAN.

Uploaded on. Case/2026 at 06:45:14 PM (Eastern Standard Time) Base City, NY

Case 1:26-cv-00578-DG   Document 1   Filed 02/02/26   Page 45 of 59 PageID #: 45

## Part B. Information About Your Application (continued)

2. Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States (including for an immigration law violation)?

   ☐ No          ☒ Yes

   If "Yes," explain the circumstances and reasons for the action.

   > YES. I WAS ACCUSED OF BEING A "KAFIR" BY SUNNI INDIVIDUALS IN MY COMMUNITY AFTER I CONVERTED TO SHIA ISLAM. THEY USED THIS WORD TO INSULT ME AND TO CLAIM THAT I WAS NO LONGER A TRUE MUSLIM. THIS ACCUSATION LED TO SERIOUS THREATS AND VIOLENCE AGAINST ME, INCLUDING PHYSICAL ATTACKS AND DEMANDS THAT I RETURN TO SUNNI ISLAM.

3.A. Have you or your family members ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

   ☐ No          ☒ Yes

   If "Yes," describe for each person the level of participation, any leadership or other positions held, and the length of time you or your family members were involved in each organization or activity.

   > YES. I HAVE BEEN ASSOCIATED WITH RELIGIOUS ORGANIZATIONS IN MY HOME COUNTRY. AFTER MY CONVERSION TO SHIA ISLAM IN JANUARY 2023, I REGULARLY ATTENDED SHIA RELIGIOUS GATHERINGS (MAJLIS) AT THE LOCAL IMAMBARGAH. MY PARTICIPATION INCLUDED LISTENING TO RELIGIOUS LECTURES, OFFERING DUAS, AND PRACTICING SHIA RITUALS. THIS WAS MY ONLY RELIGIOUS ASSOCIATION.

3.B. Do you or your family members continue to participate in any way in these organizations or groups?

   ☐ No          ☒ Yes

   If "Yes," describe for each person your or your family members' current level of participation, any leadership or other positions currently held, and the length of time you or your family members have been involved in each organization or group.

   > YES. I CONTINUE TO PARTICIPATE IN SHIA RELIGIOUS ACTIVITIES, JUST AS I DID IN PAKISTAN. I REGULARLY ATTEND MAJLIS AND OTHER SHIA GATHERINGS AT THE IMAMBARGAH HERE IN THE UNITED STATES.

4. Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?

   ☐ No          ☒ Yes

   If "Yes," explain why you are afraid and describe the nature of torture you fear, by whom, and why it would be inflicted.

   > YES. I AM AFRAID I WOULD BE SUBJECTED TO TORTURE IF I WERE RETURNED TO PAKISTAN. AFTER MY CONVERSION FROM SUNNI ISLAM TO SHIA ISLAM, I WAS ATTACKED, BEATEN, THREATENED WITH DEATH, AND CALLED A "KAFIR." THE PEOPLE WHO TARGETED ME MADE IT CLEAR THEY WOULD NOT SPARE MY LIFE. THE POLICE ALSO REFUSED TO PROTECT ME AND THREATENED ME INSTEAD, SHOWING THAT THE AUTHORITIES WOULD NOT STOP ANY FUTURE HARM. I BELIEVE THAT IF I RETURN, I COULD BE TORTURED, SEVERELY HARMED, OR KILLED BECAUSE OF MY RELIGIOUS BELIEFS. THERE IS NO SAFE PLACE FOR ME IN PAKISTAN, AND THE SAME PEOPLE WHO ATTACKED ME BEFORE COULD FIND ME AGAIN. FOR THESE REASONS, I HAVE A REAL AND SERIOUS FEAR OF TORTURE IF I AM RETURNED.

Uploaded on 02/02/2026 at 06:45:74 PM (Eastern Standard Time) Base City: NY

## Part C. Additional Information About Your Application

(**NOTE:** *Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.*)

1. Have you, your spouse, your child(ren), your parents or your siblings ever applied to the U.S. Government for refugee status, asylum, or withholding of removal?

   ☒ No          ☐ Yes

   If "Yes," explain the decision and what happened to any status you, your spouse, your child(ren), your parents, or your siblings received as a result of that decision. Indicate whether or not you were included in a parent or spouse's application. If so, include your parent or spouse's A-number in your response. If you have been denied asylum by an immigration judge or the Board of Immigration Appeals, describe any change(s) in conditions in your country or your own personal circumstances since the date of the denial that may affect your eligibility for asylum.

2.A. After leaving the country from which you are claiming asylum, did you or your spouse or child(ren) who are now in the United States travel through or reside in any other country before entering the United States?

   ☐ No          ☒ Yes

2.B. Have you, your spouse, your child(ren), or other family members, such as your parents or siblings, ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?

   ☒ No          ☐ Yes

   If "Yes" to either or both questions (2A and/or 2B), provide for each person the following: the name of each country and the length of stay, the person's status while there, the reasons for leaving, whether or not the person is entitled to return for lawful residence purposes, and whether the person applied for refugee status or for asylum while there, and if not, why he or she did not do so.

   AFTER LEAVING PAKISTAN ON SEPTEMBER 28, 2023, I TRAVELED TO ESWATINI, WHERE I STAYED FOR NINE MONTHS UNDER THE CONTROL AND STRICT SURVEILLANCE OF MY TRAVEL AGENT. BECAUSE OF THIS, I DID NOT APPLY FOR ANY LAWFUL STATUS THERE. AFTER THAT, I TRAVELED TO BRAZIL AND STAYED FOR ABOUT ONE WEEK. FROM BRAZIL, I CONTINUED MY JOURNEY THROUGH PANAMA, MEXICO FOR SHORT PERIODS WITHOUT ANY LEGAL PERMISSION TO LIVE OR REMAIN IN THOSE COUNTRIES. I HAVE NEVER APPLIED FOR OR RECEIVED ANY LAWFUL STATUS, VISA, PERMIT, OR PROTECTION IN ANY COUNTRY OTHER THAN THE UNITED STATES.

3. Have you, your spouse or your child(ren) ever ordered, incited, assisted or otherwise participated in causing harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion?

   ☒ No          ☐ Yes

   If "Yes," describe in detail each such incident and your own, your spouse's, or your child(ren)'s involvement.

Form I-589   Edition  01/20/25          Page 7 of 12

## Part C. Additional Information About Your Application (continued)

4.  After you left the country where you were harmed or fear harm, did you return to that country?

    ☒ No            ☐ Yes

    If "Yes," describe in detail the circumstances of your visit(s) (for example, the date(s) of the trip(s), the purpose(s) of the trip(s), and the length of time you remained in that country for the visit(s).)

5.  Are you filing this application more than 1 year after your last arrival in the United States?

    ☐ No            ☒ Yes

    If "Yes," explain why you did not file within the first year after you arrived. You must be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question, see Instructions, Part 1: Filing Instructions, Section V. "Completing the Form," Part C.

    > YES, THIS IS MY AMENDED I-589 APPLICATION. I RESPECTFULLY REQUEST THAT IT BE ACCEPTED AND INCLUDED IN MY CASE RECORD. MY ORIGINAL I-589 APPLICATION WAS FILED WITHIN ONE YEAR OF MY ARRIVAL IN THE UNITED STATES ON 02/14/2025.

6.  Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted, or sentenced for any crimes in the United States (including for an immigration law violation)?

    ☐ No            ☒ Yes

    If "Yes," for each instance, specify in your response: what occurred and the circumstances, dates, length of sentence received, location, the duration of the detention or imprisonment, reason(s) for the detention or conviction, any formal charges that were lodged against you or your relatives included in your application, and the reason(s) for release. Attach documents referring to these incidents, if they are available, or an explanation of why documents are not available.

    > YES. I WAS DETAINED BY UNITED STATES CUSTOMS AND BORDER PROTECTION WHEN I CROSSED THE U.S. BORDER, AND I WAS RELEASED LATER. *Also I was detained by ICE on 12/30/2025 since then I am in detention.*

## Part D. Your Signature

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546(a), provides in part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned for up to 25 years. I certify that I am physically present in the United States or seeking admission at a Port of Entry when I execute this application. I authorize the release of any information from my immigration record that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

*WARNING:* **Applicants who are in the United States unlawfully are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an immigration judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. You may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. If filing with USCIS, unexcused failure to appear for an appointment to provide biometrics (such as fingerprints) and your biographical information within the time allowed may result in an asylum officer dismissing your asylum application or referring it to an immigration judge. Failure without good cause to provide DHS with biometrics or other biographical information while in removal proceedings may result in your application being found abandoned by the immigration judge. See sections 208(d)(5)(A) and 208(d)(6) of the INA and 8 CFR sections 208.10, 1208.10, 208.20, 1003.47(d) and 1208.20.**

| Print your complete name. | Write your name in your native alphabet. |
|---|---|
| IMRAN ALI | عمران علی |

Did your spouse, parent, or child(ren) assist you in completing this application? ☒ No ☐ Yes *(If "Yes," list the name and relationship.)*

| *(Name)* | *(Relationship)* | *(Name)* | *(Relationship)* |
|---|---|---|---|

Did someone other than your spouse, parent, or child(ren) prepare this application? ☐ No ☒ Yes *(If "Yes," complete Part E.)*

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim? ☐ No ☒ Yes

Signature of Applicant *(The person in Part. A.I.)*

➡ [ DETAINED ]  01/09/2026

Sign your name so it all appears within the brackets    Date (mm/dd/yyyy)

## Part E. Declaration of Person Preparing Form, if Other Than Applicant, Spouse, Parent, or Child

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant, and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a).

| Signature of Preparer | Print Complete Name of Preparer |
|---|---|
| | JAGMOHAN SINGH |

| Daytime Telephone Number | Address of Preparer: Street Number and Name | | |
|---|---|---|---|
| ( 718 ) 8139917 | 103 11 101ST AVE | | |

| Apt. Number | City | State | Zip Code |
|---|---|---|---|
| | OZONE PARK | NY | 11416 |

| To be completed by an attorney or accredited representative (if any). | ☐ Select this box if Form G-28 is attached. | Attorney State Bar Number (if applicable) | Attorney or Accredited Representative USCIS Online Account Number (if any) |
|---|---|---|---|
| | | | |

## Part F. To Be Completed at Asylum Interview, if Applicable

**NOTE:** *You will be asked to complete this part when you appear for examination before an asylum officer of the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered _____ to _____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

_____
Signature of Applicant

_____
Date *(mm/dd/yyyy)*

_____
Write Your Name in Your Native Alphabet

_____
Signature of Asylum Officer

## Part G. To Be Completed at Removal Hearing, if Applicable

**NOTE:** *You will be asked to complete this Part when you appear before an immigration judge of the U.S. Department of Justice, Executive Office for Immigration Review (EOIR), for a hearing.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered _____ to _____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

_____
Signature of Applicant

_____
Date *(mm/dd/yyyy)*

_____
Write Your Name in Your Native Alphabet

_____
Signature of Immigration Judge



## Application for Asylum and for
## Withholding of Removal Supplement A

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-589**
OMB No. 1615-0069
Expires 09/30/2027

| A-Number *(If available)* | Date |
|---|---|
| 221149729 | 01/09/2026 |
| Applicant's Name | Applicant's Signature |
| ALI IMRAN | DETAINED |

## List All of Your Children, Regardless of Age or Marital Status
*(NOTE: Use this form and attach additional pages and documentation as needed, if you have more than four children)*

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Sex ☐ Male ☐ Female |

| 13. Is this child in the U.S.? ☐ Yes *(Complete Blocks 14 to 21.)* ☐ No *(Specify location):* |

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
☐ Yes
☐ No

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Sex ☐ Male ☐ Female |

| 13. Is this child in the U.S.? ☐ Yes *(Complete Blocks 14 to 21.)* ☐ No *(Specify location):* |

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
☑ Yes
☐ No

Uploaded on ... 2026 at 06:44:14 PM (Eastern Standard Time) Base City: NY



# Application for Asylum and for
# Withholding of Removal Supplement B

### Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-589**
OMB No. 1615-0069
Expires 09/30/2027

## Additional Information About Your Claim to Asylum

| A-Number *(if available)* | Date |
|---|---|
| 246634301 | 01-09-2026 |

| Applicant's Name | Applicant's Signature |
|---|---|
| ALI, IMRAN | DETAINED |

**NOTE:** *Use this as a continuation page for any additional information requested. Copy and complete as needed.*

Part      III

Question   2

| | | |
|---|---|---|
| ARFIA JABEEN PAKISTAN | SIALKOT, PAKISTAN | SIALKOT, |
| RUQIA KAUSAR PAKISTAN | SIALKOT, PAKISTAN | SIALKOT, |

PART -- A.III
Question - 2

| | |
|---|---|
| PAKISTAN | 03/2018-10/2019 |
| DUBAI | 10/2019 - 01/2020 |
| PAKISTAN | 01/2020-10/2021 |
| DUBAI | 10/2021-11/2021 |
| PAKISTAN | 11/2021 - 08/2022 |
| DUBAI | 08/2022 -09/2022 |
| PAKISTAN | 09/2022 -01/2023 |
| DUBAI | 01/2023 -03/2023 |
| PAKISTAN | 03/2023- 04/2023 |
| VILL- DABOWALI , PAKISTAN | 04/2023-06/2023 |



# Application for Asylum and for
# Withholding of Removal Supplement B

### Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-589**
OMB No. 1615-0069
Expires 09/30/2027

## Additional Information About Your Claim to Asylum

| A-Number (*if available*) | Date |
|---|---|
| 221-149-729 | 01-09-2026 |
| Applicant's Name | Applicant's Signature |
| ALI, IMRAN | DETAINED |

**NOTE:** *Use this as a continuation page for any additional information requested. Copy and complete as needed.*

Part _____

Question _____

STATEMENT OF IMRAN ALI A#221-149-729 IN SUPPORT OF HIS I-589 APPLICATION

My name is Imran Ali. I was born on February 1, 1981, in Sialkot, Pakistan. I am married and have three children, who are currently living in Pakistan. I was threatened and attacked by Sunni Muslims in Pakistan because of my conversion to Shia, which forced me to leave the country on September 28, 2023. I entered the United States on September 11, 2024, seeking safety for my life.

I was raised as a Sunni Muslim in Pakistan and regularly offered the five daily prayers (Salah). Later, I lived and worked in Dubai, United Arab Emirates, for several years as a driver. While living in Dubai, I shared accommodation with a friend named Ali, who is a Shia Muslim. Through him, by reading the Quran, and by attending Shia gatherings (majlis) at the local Imambargah, I became influenced by Shia Islam.

In January 2023, I converted from Sunni Islam to Shia Islam. I began practicing Shia rituals, including attending majlis at the Imambargah and offering duas for the Imams.

On January 26, 2023, when I visited Pakistan, people in my neighborhood discovered that I had converted to Shia Islam after they saw me praying in a different style, which indicates affiliation with the Shia community. They began threatening me because of my conversion. The threats became more serious over time, and I feared for my life. Despite the hatred and threats, I returned to Dubai, ignoring the abuse and hoping that the situation would calm down and that I could live safely away from those targeting me.

I returned to Dubai on March 10, 2023, and resumed work as a driver. However, my employer terminated my employment on April 2, 2023, due to a lack of work. As a result, I was forced to return to Pakistan.

On April 29, 2023, while returning from the Imambargah, I was attacked by Sunni individuals near a playground. I recognized individuals who attacked me, as they were from my village and three of them were my relatives. They beat me with kicks and punches, dragged me on the road, and demanded that I return to Sunni Islam. They shouted that they would not spare me because of my conversion to Shia Islam, which they consider to be a non-Muslim community. I refused, and as a result I was injured and sought treatment from a nearby doctor.

I went to the local police station to report the attack and seek protection, but the officer, who

Form I-589 Supplement B  Edition  01/20/25

Page 12 of 12



## Application for Asylum and for
## Withholding of Removal Supplement B

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-589**
OMB No. 1615-0069
Expires 09/30/2027

### Additional Information About Your Claim to Asylum

| A-Number *(if available)* | Date |
|---|---|
| 221-149-729 | 01-09-2026 |
| **Applicant's Name** | **Applicant's Signature** |
| ALI, IMRAN | DETAINED |

**NOTE:** *Use this as a continuation page for any additional information requested. Copy and complete as needed.*

Part _____

Question _____

was also a Sunni, refused to assist me. Instead, the police threatened to arrest me under false charges and pressured me to reconvert to Sunni Islam.

On the same night of April 29, 2023, several Sunni individuals gathered near my home and deliberately created a threatening scene. They shouted abuse and issued serious threats, demanding that I reconvert to Sunni Islam. They warned me that if I did not abandon Shia Islam, I would face severe consequences, including death. Their words made it clear that they would continue to target me and would not allow me to live peacefully as a Shia Muslim. Because of these threats, I was unable to sleep that night and believed that another attack could happen at any moment. After this incident, my wife feared for my life and asked me to leave the town.

On April 30, 2023, feared for my life, I went to my maternal uncle's house for safety. I stayed there for approximately one to one and a half months. During this time, I lived in fear and avoided public places because I was afraid the same people who attacked me would find me. I did not feel safe and could not live openly as a Shia Muslim.

On June 15, 2023, I returned home because my family and I were missing each other. There was also a religious festival, and I wanted to see my family, so I went home on the same day as the festival. On that day, some Sunni women saw me entering my house after the festival and informed other Sunni individuals, who then threw stones at my house. My wife helped me escape through the back door. While running for my safety, I fell and injured my knees and back. I sustained bruises, scratches, and swelling from the fall, and I also experienced pain from being pushed and bumped while escaping. I was treated by a nearby doctor, who cleaned and bandaged my wounds and provided pain medication. I continued to feel pain and discomfort for several days after the incident.

After the attack, Sunni individuals also threatened my wife and children in my absence. They told my family that they would not spare me and they would kill me soon. This caused my family and me to feel very unsafe and worried for our lives.

I took help from a friend for shelter and the next day he accompanied me to the police station to report the shooting. Once again, the police refused to help me. They told me that the police, lawyers, and the government belong to Sunnis and that I would not receive support because of my conversion to Shia Islam. I returned from the police station unassisted.



14

Uploaded on Case 1:26-cv-00.44714-PM (Eastern Standard Time) Base City: NY v



# Application for Asylum and for
# Withholding of Removal Supplement B

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-589**
OMB No. 1615-0069
Expires 09/30/2027

## Additional Information About Your Claim to Asylum

| A-Number *(if available)* | Date |
|---|---|
| 221-149-729 | 01-09-2026 |
| Applicant's Name | Applicant's Signature |
| ALI, IMRAN | DETAINED |

**NOTE:** *Use this as a continuation page for any additional information requested. Copy and complete as needed.*

Part _____

Question _____

I left the area and stayed for a short time with my wife's relatives in Islamabad. While I was not at home, some Sunni individuals who had been following me came to the house and asked my aunt about where I was. My aunt was the only person at home, and she told them that I was living with my family and was not there. Even though she gave them this answer, I felt very scared and realized that I had no safe place in Pakistan. This incident made me understand that no matter where I went in the country, I could still be found and harmed because of my conversion to Shia Islam.

With the help of my elder brother, I left Pakistan on September 28, 2023, and traveled to Eswatini on a visitor visa for my safety. During my travel, my agent kept all of my documents and controlled my movement. He delayed my onward travel by giving new excuses, such as saying routes were unsafe or not ready. While I was in Eswatini, the agent made me work on farms. I felt trapped and had no control over my situation. Later, things were sorted, and the agent moved me onward to continue my journey.

I later traveled to Brazil for one week and then continued my journey to the United States with the help of an agent. During this journey, we were blindfolded, moved at night, and kept hidden during the day to avoid detention.

While traveling, I was in Panama when I had a medical problem affecting my nails and received free medication. During the same time, I was robbed and lost some of my belongings. Later, in Mexico, I was robbed again and assaulted by members of the Mexican Mafia. I did not report either incident because I feared for my safety. These experiences showed me that I was not safe in transit countries.

I entered the United States through the Arizona border on September 11, 2024. I came to the United States because I feared for my life in Pakistan and could not find protection in any other country. Because of the attacks, ongoing threats, and the lack of protection from authorities in Pakistan, I have no safe place in my home country. I fear that if I return to Pakistan, I will be seriously harmed or killed because of my religious conversion to Shia Islam, including my regular attendance at majlis in the local Imambargah and my devotion to the teachings of the Ahl al-Bayt. I continue to practice Shia Islam here in the United States and attend the Imambargah regularly.

# Exhibit C

Uploaded on: 01/04/2026 at 06:59:56 AM (Eastern Standard Time) Base City: NYB

Department of Homeland Security
US Immigration and Customs Enforcement

**Notice to EOIR: Alien Address**

| | |
|---|---|
| Date: | January 4, 2026 |
| To: | Office of the Immigration Judge, EOIR<br>201 Varick St 5th Floor<br>New York, NY 10014 |
| From: | ICE ERO<br>26 Federal Plaza<br>New York, NY 10278 |

Respondent: **Ali, Imran**                                         A Number: **221 149 729**

This is to notify you that this respondent is:

☐ Currently incarcerated by federal, state or local authorities.  A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by ICE (Form I-247) has been filed with the institution shown below.  He/she is incarcerated at:

His/her anticipated release date is.

☒ Detained by ICE on: 12/30/2025

Orange County Jail
110 Wells Farm Road
Goshen, NY 10924

☐ Detained by ICE and transferred on                          *to*:

☐ Released from ICE custody on the following condition(s):
    ☐ Order of Supervision or Own Recognizance (Form I-220A)
    ☐ Bond in the amount of *Enter Dollar Amount of Respondent's Bond*
    ☐ Removed, Deported, or Excluded
    ☐ Other

Form I-830 (Rev.4/26/99) N

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:

☐ I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official:  SDDO Green

Department of Homeland Security
US Immigration and Customs Enforcement

**Notice to EOIR: Alien Address**

---

Date:    January 30 2026

To:    Office of the Immigration Judge, EOIR
        201 Varick St 5th Floor
        New York, NY 10014

From:    ICE ERO
        26 Federal Plaza
        New York, NY 10278

Respondent: Ali, Imran                              A Number: **221 149 729**

---

This is to notify you that this respondent is:

---

☐ Currently incarcerated by federal, state or local authorities. A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

His/her anticipated release date is.

☐ Detained by ICE on:

☒ Detained by ICE and transferred on:    **01/23/2026**         *to*:    **BROOKLYN MDC**
                                                                              80 29th St,
                                                                              Brooklyn, NY 11232

☐ Released from ICE custody on the following condition(s):
    ☐ Order of Supervision or Own Recognizance (Form I-220A)
    ☐ Bond in the amount of *Enter Dollar Amount of Respondent's Bond*
    ☐ Removed, Deported, or Excluded
    ☐ Other

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:

☐ I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

ICE Official: DO QUIZHPI

---

Form I-830 (Rev.4/26/99) N

# Exhibit D

< Back to Cases

**A-Number:** 221-149-729, ALI, IMRAN

Select a case to view details and file documents

| Removal | Charging Doc. Date: 11/03/2024 | Case Pending |
|---------|--------------------------------|--------------|
| Bond | Charging Doc. Date: 11/03/2024 Bond Request Date: 01/15/2026 | Case Completed |

End of list. Please file a Form EOIR-27 or EOIR-33 using "Appearances" link in the header to view additional cases.

## Court Information

| | |
|---|---|
| Case Type: | Bond |
| Bond Request Date: | 01/15/2026 |
| Alien Name: | ALI, IMRAN |
| Hearing Location: | -- NA -- |
| Next Bond Hearing: | -- NA -- |
| Hearing Medium: | -- NA -- |

| | |
|---|---|
| Immigration Court: | 201 VARICK ST., 5TH FL RM 507 NEW YORK, NY 10014 |
| IJ Decision Date: | 01/22/2026 |
| Bond Decision: | The Immigration Judge found no jurisdiction. |

## Court Actions

You do not have permission to view this case. For cases on appeal at the BIA, only representatives with a Form EOIR-27 on file may view the eROP. For information about the FOIA process, please visit **https://www.justice.gov/eoir/freedom-information-act-foia**. Please note that FOIA requests must be filed in accordance with the EOIR Policy Manual.